————o————

No. 3278.

(Court of Appeal, Parish of Orleans.)

MICHAEL J. LARKIN vs. DENIS, DANZIGER & TESSIER, ET ALS.

1. In an action to annul a contract of promise of sale, on the ground that an unreasonable delay has expired within which one of the parties has taken no steps to consummate the transaction, a putting in default is necessary to recovery.

2. In the instant case neither was there a putting in default, nor was any act done on the part of defendants which can be construed as an act receding from the agreement.

Appeal from the Civil District Court, Division C.

Jos. F. Walton, Plaintiff and Appellee.

Farrar, Jonas & Kruttschnitt, Defendants and Appellants.

MOORE, J. Alleging himself to be the owner of a certain piece of real estate in the city of New Orleans and that his title thereto is slandered by the defendants, who claim to be the owners thereof,

34

and who have placed of, record in the Conveyance office of the parish of Orleans two certain documents, one thereof "purporting to be a sale by D. B. H. Chaffe to the defendants," of date December 24th, 1902, and the other document "purporting to be an offer of sale by the plaintiff to Theodore W. Danziger, of date November 27th, 1902," of the said property, the plaintiff brings this suit in order to compel the defendants, quoting from the prayer of the petition, " to disclaim title to the said property, or to assert herein such rights as they may have against said property;" that the two inscriptions above stated be cancelled, and that he have judgment against the defendants by way of damages in the sum of $1200.00.

Tendering the general denial the defendants further answer, substantially as follows :

First. That in so far as the conveyance from D. B. H. Chaffe to defendants is concerned the same was taken by them in order to perfect the title which they had contracted to obtain from plaintiff but that they subsequently ascertained that Chaffe had already re-transferred said property to plaintiff, and that they had, therefore, waived and cancelled any rights to said title from said Chaffe ; and,

Second. That they caused to be placed of record the document. secondly described in plaintiff's petition, of date November 27th, 1902, and which, they aver, is an offer by defendant, Theodore W. Danziger, to buy the said property, and an acceptance of the offer by the plaintiff ; that the acceptance was made by and the agreement thereof signed by James A. Brennan, duly authorized thereto by the plaintiff ; that the price agreed on was $500, which was to be paid when a good and valid title was made to Danziger ; that a deposit of 10 per. cent. of the purchase price was paid to plaintiff, which has never been returned or offered to the defendant ; that they have never in any manner been put in default ; that the said promise to sell is still in full force and effect ; that they were at all times and are still willing to pay the plaintiff the price agreed on and to take title to the property under the agreement aforesaid.

There was judgment in favor of the plaintiff ordering the cancellation of the sale from Chaffe to the defendants as also the offer to purchase by Danziger, and rejecting the claim for damages.

From this judgment defendants appeal.

The facts, as we appreciate them, are that on the 17th day of October, 1887, D. B. H. Chaffe acquired at tax sale the property in question for the sum of $3.00; the property being then owned by, and the tax assessed against E. S. Wurzburger. Subsequently Chaffe sold the property to the plaintiff for $17.00, this latter sale was made on the 31st January, 1894. It appears, however, that this property had been previously acquired by Larkin at a judicial sale had in the

succession of Wurzberger. This adjudication thereof to him having been made on the 12th of July, 1893, but the final notarial act of sale was executed and signed only on the 3rd day of February, 1894. The price paid was $15.00.

This is the source of plaintiff's title, the validity of which is not questioned.

On November 27th, 1902, the following document was executed by defendant, T. W. Danziger, as the promissor and plaintiff, M. J. Larkin, as the acceptor :

New Orleans, November 27th, 1902.

Denis, Danziger & Tessier :—

"I offer to purchase the property, No. 5, lots in sq. St. Louis, Conti, Scott and Cortez streets, the ground measuring 143.7, 1,230.9, 4271.8,1 in depth, for the sum of five hundred dollars cash. If this offer is accepted, I will deposit in your hands the ten per cent. of the amount of the above offer. Act of sale at my expense before any Esquire Notary Public, which I bind myself to sign and pay the vendor the purchase price, if a good and valid title can be made to me."

(Signed) T. W. DANZIGER.

I accept the above offer.

JAS. A. BRENNAN,
for M. J. Larkin.

The deposit of $50.00 was then made.

This agreement was registered in the Conveyance office, at the instance of Danziger, on the 12th Dec., 1902. Danziger then turned the matter over to his lawyer for investigation of title. The latter reported to him that there was a tax title upon the property standing in the name of D. B. H. Chaffe, whereupon Danziger expressed his mind to take the property, notwithstanding what to defendants appeared to be only an apparent cloud on the title. Negotiation was then opened with Mr. Chaffe by Danziger, the result of which was that the former quit-claimed his interest in the property to the latter. This was on the 24th December, 1892. The testimony is uncontradicted that this quit-claim deed was taken solely to do away with what was supposed to be a cloud upon Larkin's title, and not for the purpose of avoiding taking the property from Larkin under the agreement of November 27th. It transpired that Chaffe, as stated above, had, prior to this quit-claim deed to Danziger, sold the property to Larkin, and upon this discovery the quit-claim deed was recalled and annulled.

On 10th December, 1902, only thirteen days after the agreement between Larkin and Danziger, by which the latter promised to sell and the latter to buy the property in question, the former addressed

a letter to his representative, Brennan, as follows :

" In regard to the property on St. Louis and Scot. streets, I would call your attention to the fact that when I saw you last you told me that everything would be O. K. by Tuesday or Wednesday. Now, as I find that time is passed, and sold the property, so cheap in order to realize the cash, I find that I am disappointed. If this matter is not wound up by Friday next, the 12th instant, say at 12 o'clock, then consider the deal off."

On the next day Brennan wrote Danziger enclosing a copy of the above, stating that " should you (Danziger) fail to pass sale at that time I (Brennan) will return your deposit of $50 on demand.

No response was made to this letter. It is in evidence, however, that notwithstanding Larkin's agreement of November 27th to sell the property to Danziger, he proceeded to advertise the property for sale at public auction, and caused it to be adjudicated to a Dr. Brunning, on the 23rd day of December, 1902; the advertisement preceeding the adjudication by three weeks, which would bring it up to about the 2nd or 3rd of December, and one week prior to his letter to Brennan of December 10th.

Whilst Danziger took no steps to arrest the sale pending the period of its advertisement, he nevertheless continued, through his counsel, to investigate the title and endeavored to obtain the usual conveyance and mortgage certificates and tax researches, even giving extra compensation to the clerks to hasten the issuance of the certificates. These certificates had not been obtained up to the 12th December; it was only on the 23rd of that month that Danziger obtained them. On the day of the auction sale Danziger protested at the public offering. On the 20th of February, 1902, this suit was brought, and on the 27th of March Dr. Brunning, the adjudicatee at the public auction, formally rejected the title.

The contention of plaintiff is that he was justified in concluding that defendant had receded from his agreement and forfeited his earnest money, and that defendant's conduct does in fact constitute a recession therefrom.

The facts do not justify this conclusion. It is in evidence that the usual time consumed in consummating transactions of this sort is thirty days. One-half only of that period had expired when plaintiff himself fixed a period of twenty-four hours within which the transaction was to be concluded, in default of which he would call the " deal off."

When the plaintiff himself acquired this property at the succession sale of Wurzberger a period of seven months elapsed between the day of adjudication and the passing of the notarial act of sale; and when the property was adjudicated to Dr. Brunning three

**37**

months elapsed before Dr. Brunning rejected the title and no complaint, so far as the record shows, was offered by the plaintiff.

Besides this, unless there was a formal receding from the transaction on the part of Danziger, which there was not, plaintiff should have put the defendants in default by tendering title and a formal act of sale, or at least by calling upon him to name his notary before whom the vendor might make title. Nothing of this sort was done. On the contrary, as we have stated, the property was advertised by Larkin for sale before his letter to Brennan was written, creating a strong suspicion that he, and not Danziger, was the party anxious to bring about an abandonment of the agreement.

So far as the Chaffe title and the quit-claim thereto, and its registry is concerned, defendants make no defense thereto and admit their nullity. To this extent the judgment appealed from is correct, in all other respects it is error, and it will be amended accordingly. It is, therefore, ordered, adjudged and decreed that the judgment appealed from be amended by striking out therefrom so much thereof as decrees the cancellation and erasure of the inscription of the offer to purchase the property in dispute by Theodore W. Danziger from Michael J. Larkin, registered in Conveyance Book 189, folio 28, and as thus amended the judgment is affirmed. Defendants to pay the costs of lower court and plaintiff and appellee to pay the costs of appeal.

Dufour, J., not having heard the argument, takes no part.